```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
HADASSAH GURFEIN, individually and
on behalf of all others similarly
situated,

                    Plaintiff,        04 Civ. 9526 (LLS)

     v.                                OPINION and ORDER

AMERITRADE, INC.

                    Defendant.
--------------------------------------x
```

In this class action, plaintiff claims damages from excessive delays and frustrations in the execution of her orders for purchases of options on the American Stock Exchange ("AMEX"). Initially, she claimed violations of the federal securities laws by the AMEX, Knight Trading Group and its related entities, and the present defendant, Ameritrade, Inc. ("Ameritrade"). The court dismissed the claims against the AMEX and the Knight defendants, and they are no longer in the case. The plaintiff filed a Second Amended Complaint against Ameritrade, which Ameritrade now moves to dismiss as (a) preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f) (West Supp. 2006), and (b) failing to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6).

The argument that the Second Amended Complaint is preempted by SLUSA depends upon characterizing its claim (for breach of contract) as merely an artful repleading of plaintiff's earlier federal claims, because SLUSA does not preempt state law contract claims.  The argument that the Second Amended Complaint fails to state a breach of contract claim rests upon various grounds, including differences between the terms of the supposed contract and those of the documents cited in support of it.

The court determines that the Second Amended Complaint pleads a breach of contract, not a federal securities claim for misrepresentation or omission of a material fact, and thus is unaffected by SLUSA.  However, the documents cited as support for the contract unanimously define an obligation different from the one claimed in the Second Amended Complaint, which is therefore dismissed as merely conclusory, and thus failing to state a claim upon which relief can be granted.

1.

The Second Amended Complaint states that, in exchange for the payment of fees for her transactions, Ameritrade promised to execute plaintiff's orders "instantaneously,

i.e. within seconds" and failed to do so.  See Second Am. Cmplt. ¶¶ 1, 4, 6 ("instantaneously, i.e. within seconds"), 49 ("instantaneously"), 53 ("instantly"), 57, 66 ("instantaneously").  That is a straightforward claim of breach of contract.  It does not rely on, or need, any assertion of misrepresentation or omission.  There is no reason the stated claim cannot be prosecuted as a common-law breach of contract claim.  Paraphrasing what Judge Sprizzo wrote in Paru v. Mut. Of Am. Life Ins. Co., 2006 WL 1292828, at *5 (S.D.N.Y. May 11, 2006) (citation omitted):

> Having carefully examined this plaintiff's Complaint, this Court finds that it does not contain a single allegation of a misrepresentation or omission of material fact made by defendant which could trigger SLUSA preemption.  Plaintiff in this case has alleged that defendant had a [contractual] obligation to take certain measures [in the execution of] plaintiff's investments, defendant failed to do so, and such failure resulted in plaintiff being harmed.  Even looking beyond the face of the Complaint to the substance of plaintiff's allegations, it is clear that plaintiff's claim is not based, either explicitly or implicitly, on any misstatements or omissions.  Therefore, plaintiff's state law breach of [contract] claim is not preempted by SLUSA.

Plaintiff's earlier complaint, now dismissed, relied heavily on a Report by the Securities and Exchange Commission ("SEC") Office of Compliance (which set forth a litany of the AMEX's failures to detect or correct

violations of its rules for execution of options orders) to support her claims of SEC Rule 10b-5 violations by the defendants. The Second Amended Complaint contains extensive portions dealing with that report. Ameritrade seizes upon these portions, arguing that they evidence that plaintiff's purpose and intent is to reassert her securities law claims under the guise of a contract claim. A fair reading of the Second Amended Complaint as a whole does not bear out that view. In the Second Amended Complaint, unlike plaintiff's earlier one, the SEC Report is not tendered as the basis of a claim, but only to show that there are many other class members who shared plaintiff's experience, to cover the class requirement of numerosity.

SLUSA preempts "covered" class actions based on state law alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f). It does not apply to breaches of contract under state law, even though the contract may involve a securities transaction, as long as fraud is not alleged. See Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc., 341 F. Supp. 2d 258 (S.D.N.Y. 2004) (finding that plaintiff's breach of contract claims not sounding in fraud are not preempted by

SLUSA).  Accordingly, SLUSA does not preempt plaintiff's claim as set forth in the Second Amended Complaint.

2.

Under Fed. R. Civ. P. 12(b)(6), on a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must accept the factual allegations of the complaint as true, and draw all inferences in favor of the plaintiff.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The court may consider exhibits annexed to the complaint or incorporated in it by reference.  Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).  The court may dismiss the complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiff's claim for breach of contract is precise and specific:  that Ameritrade undertook to execute trades "instantaneously, i.e. within seconds."  To support that claim, the Second Amended Complaint points to three sources:  (a) Ameritrade Holdings Fiscal 2000 Form 10-K ("Our goal is to provide the best execution using the best

-5-

information at the best price"), (b) the 1999 Terms and Conditions, set forth in Ameritrade's marketing materials ("any order is always executed at the 'best bid,' 'best offer,' or at price superior to the other one by virtue of the market maker's inventory positioning capability"), and (c) the Frequently Asked Questions page of the Ameritrade website:

> How does Ameritrade route orders differently than other brokers?
> Our sophisticated order routing technology allows us to dynamically distribute orders to multiple market centers in an effort to obtain best execution.  In addition, we continually and routinely monitor our execution quality to make improvements that will benefit our clients.  We employ over 100 metrics including price, speed, liquidity and opportunities for price improvement, to assure that order flow is directed to markets that provide best execution for our clients.
>
> What is auto-execution?
> Auto-execution is a threshold established by a liquidity provider (market maker) that allows for the automated execution of orders regardless of the actual displayed size on the National Best Bid and Offer (NBBO).  In an attempt to increase the likelihood that your order is executed in its entirety, Ameritrade routs orders to numerous liquidity providers that offer auto-execution.  Auto-execution, however, is never guaranteed.  It can be decreased or discontinued at will by the liquidity provider.

None of these sources supports the claim that defendant made a promise to execute plaintiff's orders

"instantaneously, i.e. within seconds."  The most that they can be construed to support is that defendant was under a duty to distribute orders to market makers "in an effort to obtain best execution."

The duty set forth in those documents is not a mere shorthand expression, or summary, of a duty to execute "instantaneously, i.e. within seconds."  The duties and the nature of the proof required to establish the one are quite different from the proof required to establish the other.  If the requirement is to execute "instantaneously, i.e. within seconds," all that plaintiff needs to show is that there was delay.  If the duty is to distribute orders "in an effort to obtain" the "goal" of best execution, which includes the consideration of factors other than price, one must consider the circumstances of each individual order.  See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, 135 F.3d 266, 270 n.2 (3d Cir. 1998), cert. denied 525 U.S. 811 (1998) (to obtain best execution a broker-dealer must take into account order size, trading characteristics of the security, speed of execution, clearing costs, and the cost and difficulty of executing an order in a particular market).

Since the materials cited in the Second Amended Complaint fail to support it, the characterization of

-7-

defendant's duty as the execution of orders "instantaneously, i.e. within seconds" is merely conclusory.  Merely conclusory allegations do not state a claim.  Amron v. Morgan Stanley Inv. Advisors Inc., Nos. 04-3938-cv, 04-3940-cv, slip op. 9405, 9414 (2d Cir. Sept. 26, 2006) ("[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice"); Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").  Thus, the Second Amended Complaint fails to state a claim on which relief can be granted, and accordingly, is dismissed.[1]

So ordered.

Dated: New York, New York
       October 13, 2006

                                                    *Louis L. Stanton*
                                                    LOUIS L. STANTON
                                                           U.S.D.J.

---

[1] Plaintiff has made no request for leave to replead.